1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10   JALANI GOINS,                          )   1:09-CV-00882 LJO GSA HC
                                            )
11              Petitioner,                 )   FINDINGS AND RECOMMENDATION
                                            )   REGARDING PETITION FOR WRIT OF
12        v.                                )   HABEAS CORPUS
                                            )
13                                          )
     M. McDONALD, Warden,                   )
14                                          )
                Respondent.                 )
15   _____       )

16

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                          **PROCEDURAL BACKGROUND**

20        Petitioner is currently in the custody of the California Department of Corrections pursuant to

21   a judgment of the Superior Court of California, County of Fresno, Hon. W. Kent Hamlin presiding,

22   following his conviction by jury trial on May 18, 2006, of two counts of second degree robbery with

23   personal use of a firearm. (LD[1] 5:2.)  On September 8, 2006, Petitioner was sentenced to serve a total

24   determinate term of thirteen years in state prison. (LD 5:2.)

25        Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District

26   (hereinafter "Fifth DCA"). On March 21, 2008, the judgment was affirmed in a reasoned opinion.

27   (LD 5.) Petitioner then filed a petition for review in the California Supreme Court, and the petition

28
_____
     [1]"LD" refers to the documents lodged by Respondent with his response.

1  was summarily denied. (LD 6.)

2      On May 11, 2009, Petitioner filed the instant federal habeas petition.  Petitioner raises the

3  following grounds for relief: 1) There was insufficient evidence to support the arming enhancement;

4  and 2) The sentence was unauthorized because of a typographical error on the verdict form.

5  Respondent filed an answer to the petition on August 27, 2009. Petitioner did not file a traverse.

6                          **FACTUAL BACKGROUND**[2]

7          At 2:30 a.m. on October 11, 2003, Antonio Palomares and his wife, Rosa, were
   walking with Jose Pedro Becerra and Norma Martinez along San Pablo Avenue and
8  McKenzie Street. The quartet had just left a party and the two couples were walking to
   Becerra's home. Becerra and Martinez were walking about eight feet in front of the
9  Palomareses. At one point, Antonio and Jose noticed a white Dodge Intrepid parked at the
   corner of San Pablo. The engine of the vehicle was running but the lights were off. The
10 windows of the Intrepid were heavily tinted and the two couples could not see inside. As the
   foursome turned from San Pablo onto McKenzie they saw the same vehicle parked on the
11 street in front of them. The license plate of the Intrepid read "Tyshon."

12         Although it was dark outside, a light illuminated the street and made visibility clear.
   Appellant and another male got out of the Intrepid and confronted the two couples. Appellant
13 approached the Palomareses and told Antonio, "Give me everything that you have." Antonio
   kept walking until appellant pointed a black revolver at Antonio's chest. Appellant told
14 Antonio "he wasn't playing." Rosa became frightened and "thought we were both going to be
   killed." Appellant eventually demanded that Antonio remove everything from his pockets. At
15 this point, Antonio was four feet away from appellant and got a good look at appellant's face.
   Although Antonio identified appellant as the gunman at trial, he did not identify appellant's
16 accomplice. Antonio placed his wallet, cell phone, necklace, and chain on the ground.
   Appellant kept the revolver trained on Antonio while picking up the personal property.

17
   
18         While appellant was robbing Antonio, his companion confronted Becerra and
   Martinez about 13 feet away. The accomplice pointed a black, semi-automatic "Escuadra"
19 pistol at Becerra and demanded possession of Becerra's wallet and boots. Antonio looked at
   Becerra during the robberies and saw the accomplice pointing the handgun at Becerra
20 throughout the entire incident. Becerra handed over his wallet and the robber grabbed it.
   Becerra offered the accomplice his cell phone but the accomplice did not want it. After
21 claiming the wallet, the accomplice demanded that Becerra remove his boots. Becerra
   hesitated until the accomplice pulled at the trigger on the gun.

22         Before Becerra handed over his boots, a neighbor came from a nearby apartment and
   both suspects fled to the Dodge Intrepid. Appellant entered the front passenger side of the
23 Intrepid. The accomplice got into the rear driver's side and the Intrepid sped away.
   Immediately after the departure of the Intrepid, Antonio called the police on Becerra's cell
24 phone and reported the robberies.

25         At 2:30 a.m. Fresno Police Officer Brian Urton was on patrol duty. He received a
   armed robbery broadcast for a 1996 or 1997 Dodge Intrepid bearing the license plate
26 "Tyshon." Officer Urton ran the plate and determined the vehicle was registered to a Madera

27  _____

28      [2]The factual background is taken from the opinion of the state appellate court and is presumed correct. 28
   U.S.C. § 2254(e)(1).

resident. Because Highway 99 represented the one likely route to proceed from Fresno to Madera, Urton parked on the side of the highway near Herndon Avenue. At 3:47 a.m., Office Urton saw a white Dodge Intrepid bearing the license plate "Tishone." The vehicle was a mid-1990's vintage and was heading north on Highway 99. Urton followed the Intrepid on Highway 99 until it pulled off of the freeway at Avenue 12 in Madera. The Intrepid stopped in a gas station parking lot and Urton activated his overhead lights and parked his police vehicle to block the Dodge. Appellant was the only person inside the vehicle and he was taken into custody.

Fresno Police Officer Ignacio Ruiz responded to Antonio Palomares's call and arrived at the crime scene within minutes of the robberies. After receiving a broadcast about the apprehension of a possible suspect, Ruiz transported Antonio and Jose Becerra to the gas station for a field show-up. Antonio said he was "absolutely positive" that appellant was the man who had robbed him. Antonio identified appellant based on the shape of his face and other facial features. Jose Becerra said appellant "looked like the one that had Antonio" but could not positively identify him.

The white Dodge Intrepid was registered to appellant's girlfriend, Natisha Goins. Natisha testified she had been with appellant at her Madera home until 5:00 p.m. on October 10, 2003. She said she did not hear from him until 1:00 a.m. on October 11, 2003, when he called to say he was on his way home. During a postarrest interview, appellant admitted taking control of the Intrepid between 5:00 and 6:00 p.m. on October 10. Officers conducted a search of the vehicle but did not locate any of the stolen property or any weapons. However, officers did find multiple pieces of mail addressed to appellant inside the vehicle. Law enforcement officers found appellant's fingerprints on the pieces of mail and the hood of the Intrepid.

*Defense*

The defense presented the testimony of Craig Harlan, Ph.D., a licensed marriage and family therapist for 30 years. Dr. Harlan discussed the general science behind eyewitness identifications but did not offer an opinion regarding the specific facts of the instant case.

(LD 5:3-5.)

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

## III.  Review of Petition

### A.  Ground One

In his first claim, Petitioner alleges there was insufficient evidence to support the arming enhancement as to victim Jose Becerra in count three.

This claim was presented on direct appeal to the Fifth DCA, where it was rejected in a reasoned opinion. (LD 5:5-8.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 6.) The California Supreme Court, by its "silent order" denying

1    review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same

2    reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

3         The Fifth DCA rejected the claim as follows:

4         Appellant contends the evidence was insufficient to show that appellant personally
          used a firearm in the robbery of Jose Becerra.
5
          He specifically argues:
6
          "The inquiry here relates to whether or not sufficient evidence was presented to find
7         that Mr. Goins personally used a firearm within the meaning of Penal Code section
          12022.53, subdivision (b) in the commission of the offense alleged in count 3-the
8         robbery of Jose Becerra. [¶] ... [¶]

9         "With respect to section 12022.53, subdivision (b), it is apparent from the plain
          language of this section that, other than in a pled and proved street gang setting, it
10        applies only to those persons who themselves personally use a firearm in the
          commission of the charged offense. In Mr. Goins case the evidence was undisputed
11        that Mr. Goins' use of a firearm was in the robbery of Mr. Palomares. While Mr.
          Goins may have been derivatively liable for the underlying crime of the robbery of
12        Mr. Becerra as an aider and abettor, the evidence did not show that he personally used
          a weapon in that crime. [¶] ... [¶]
13
          "Here, the record shows that when an unidentified man robbed Juan Becerra, Mr.
14        Goins was completely occupied robbing Mr. Palomares several feet away. The
          evidence was undisputed that the unidentified man pointed a gun at Mr. Becerra, took
15        his wallet, and ordered him to remove his boots. There is no indication in the record
          of any significant interaction between Mr. Goins and the unidentified robber other
16        than arriving and departing in the same vehicle. There is no indication in the record of
          any interaction between Mr. Goins and the Becerras.
17
          "... The evidence thus suggests that the robbery of Mr. Palomares was sufficiently
18        separate from the robbery of Jose Becerra, that Mr. Goins' use of a gun to rob the
          former, did not translate into use of the gun to rob Mr. Becerra. Accordingly Mr.
19        Goins requests that the proved finding that he personally used a firearm in the
          commission of count three be reversed."
20
               Section 12022.53 is part of the 10-20-life law enacted in 1997 to enhance penalties
21        for firearm use in the commission of certain felonies. The legislative intent behind the statute
          is the imposition of longer prison sentences upon felons who use firearms in the commission
22        of their crimes, to protect citizens and to deter violent crime. (People v. Grandy (2006) 144
          Cal.App.4th 33, 42.) Section 12022.53 recognizes different degrees of culpability and
23        imposes three gradations of punishment based on increasingly serious types and
          consequences of firearm use in the commission of designated felonies. (People v. Martinez
24        (1999) 76 Cal.App.4th 489, 495.) Section 12022.53, subdivisions (b) and (c) require that the
          defendant personally use or discharge a firearm in the commission of the underlying felony.
25        (People v. Carrasco (2006) 137 Cal.App.4th 1050, 1058.) The specific felonies to which
          subdivisions (b) and (c) apply are set forth in subdivision (a). Robbery is a specified felony.
26
               Under section 12022.53, subdivision (b), if the defendant personally used a firearm,
27        the mandatory additional consecutive punishment is 10 years. The phrase "uses a firearm," as
          found in subdivision (b), encompasses the display of an unloaded or inoperable firearm. A
28        defendant "uses" a firearm by intentionally displaying it in a menacing manner, firing it, or

striking or hitting a human being with it. (*People v. Grandy, supra,* 144 Cal.App.4th at p. 42, citing *People v. Martinez, supra,* 76 Cal.App.4th at p. 493 and *People v. Johnson* (1995) 38 Cal.App.4th 1315, 1319-1321.) A firearm use enhancement attaches to an offense, regardless of its nature, if the firearm use aids the defendant in completing one of its essential elements. The enhancement is not limited to situations where the gun is pointed at the victim. Personal use may be found where the defendant intentionally displayed a firearm in a menacing manner to facilitate the commission of an underlying crime. (*People v. Carrasco, supra,* 137 Cal.App.4th at p. 1059.)

Appellant acknowledges "the evidence was undisputed that Mr. Goins' use of a firearm was in the robbery of Mr. Palomares." He further concedes he may have been derivatively liable for the underlying crime of the robbery of Becerra as an aider and abettor. Nevertheless, he maintains the evidence did not show that he personally used a weapon in the robbery of Becerra. Simple firearm use may include the threatening display of a gun or its use as a cudgel. (*People v. Palacios* (2007) 41 Cal.4th 720, 725, fn. 3.) Here, as respondent points out, appellant aided his accomplice in robbing Becerra by keeping Mr. and Mrs. Palomares occupied during the criminal encounter. By pointing his weapon at the Palomareses and demanding their valuables, appellant gave his companion both the time and opportunity to rob Mr. Becerra. In other words, appellant knew of his companion's illegal purpose to commit the crime of robbery and intended to facilitate that unlawful purpose by his conduct with respect to Mr. and Mrs. Palomares. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) Sufficient evidence supports the enhancement.

(LD 5: 5-8.)

In reviewing insufficiency of evidence claims, California courts expressly follow the <u>Jackson</u> standard enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>See</u> <u>People v. Johnson</u>, 26 Cal.3d 557, 575-578 (1980); <u>see also</u> <u>People v. Thomas</u>, 2 Cal.4th 489, 513 (1992).  Pursuant to the Supreme Court's holding in <u>Jackson</u>, the test in determining whether a factual finding is fairly supported by the record is as follows:

"[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990).

This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455 U.S. 539, 597 (1981).

1    In this case, the appellate court noted that Petitioner conceded he was found guilty of the

2    robberies of Mr. and Mrs. Palomares and Mr. Becerra. Petitioner also conceded that he may have

3    been derivatively liable for the robbery of Becerra as an aider and abettor. Petitioner also conceded

4    that he personally used a firearm in the commission of the first robbery, but not as to Becerra. The

5    appellate court noted that the firearm use enhancement requires that a firearm be personally used

6    during the crime's commission. It further noted that use can include intentionally displaying the

7    weapon in a menacing manner to facilitate the commission of an underlying crime. The court then

8    concluded that Petitioner personally used the firearm in the robbery of Becerra by keeping Mr. and

9    Mrs. Palomares occupied during the encounter. By pointing the weapon at the couple, Petitioner

10   provided the time and opportunity for his companion to commit the robbery of Becerra. In other

11   words, Petitioner displayed the weapon to facilitate the second robbery.

12   Given the above discussion and the record, this Court finds that the state court reasonably

13   determined there was substantial evidence from which the jury could conclude Petitioner personally

14   used a firearm in the robbery of Becerra. As noted by Respondent, there was an obvious plan by

15   Petitioner and his co-defendant to target the victims and rob them together. Petitioner and his co-

16   defendant were spotted at two different locations by the victims, and they were in a car parked with

17   the engine running and the lights off. (RT[3] 999, 1131.) On the second occasion, Petitioner and his co-

18   defendant parked ahead of the victims. (RT 999, 1131.)  As the victims approached, Petitioner and

19   his co-defendant exited the vehicle. Petitioner approached Mr. and Mrs. Palomares while his co-

20   defendant approached Mr. Becerra. (RT 1001-02, 1005, 1124, 1128, 1132-33, 1140.) Petitioner held

21   a gun on Mr. and Mrs. Palomares while his co-defendant engaged Becerra. (RT 1002-05, 1028,

22   1031, 1133, 1138, 1140.) As Respondent notes, it could have been reasonably inferred that

23   Petitioner's actions to control Mr. and Mrs. Palomares allowed his co-defendant to rob Becerra and

24   for Becerra to be more cooperative. It could further be inferred that Petitioner's co-defendant would

25   not have been able to rob Becerra if not for Petitioner's actions. Accordingly, the state court decision

26   was not an unreasonable application of Jackson and the claim should be denied.

27

28        [3]"RT refers to the Reporter's Transcript on Appeal.

**B.  Ground Two**

In his second and final claim, Petitioner argues there was a typographical error on the verdict form which resulted in an unauthorized sentence. Respondent contends this claim is procedurally defaulted. He further alleges Petitioner fails to state a claim. In addition, he contends the claim is without merit.

This claim was also presented and rejected on direct appeal to the Fifth DCA. (LD 5:8-11.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 6.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting this claim, the Fifth DCA stated:

> In the instant case, counts 2 and 3 of the consolidated information each alleged: "It is further alleged that said defendant(s) Jalani Jamahl Goines *personally used a firearm* within the meaning of Penal Code section 12022.53(b)." (Italics added.) However, the forms of verdict for counts 2 and 3, as given to the jury, each stated in relevant part: "WE FURTHER FIND the allegation that during the commission of the above offense the defendant, JALANI JAMAHL GOINS, was *personally armed with a firearm* ...." (Italics added.) The findings concluded with a blank line and a prompt to the jurors to enter the words "'proved'" or "'not proved.'" On May 18, 2006, the jurors returned verdicts, found appellant guilty of counts 2 and 3 (second degree robbery of: Palomares and Becerra, respectively), and found in each case the "personally armed" allegation to be "proved."

> On February 20, 2008, this court independently directed both parties to address the following question:

> "What impact, if any, does the disparity in language between the consolidated information and the forms of verdict have upon the trial court's ultimate disposition of the enhancement under Penal Code section 12022.53, subdivision (b) as to counts 2 and 3?"

> On February 29, 2008, appellant filed a letter brief asserting that personal arming (§ 12022, subd. (a)) is a lesser included offense of personal use (§ 12022.53) and maintaining the 10-year consecutive sentence on count 2 and the 10-year concurrent sentence on count 3, both for use of a firearm, should be reversed. Appellant concluded "[b]ased on the enhancement found true by the jury the correct additional punishment is one year." In a letter brief filed that same date, respondent maintained the discrepancy between the consolidated information and the returned forms of verdict was merely an irregularity in the latter. Respondent further maintained that technical defects in a verdict could be disregarded where, as here, "'the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.'"

> In *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*), defendant was convicted of unlawfully taking a vehicle, evading a police officer with willful and wanton disregard for the safety of others, and three counts of assault on a peace officer with a firearm. The jury also

found he was personally armed with a firearm in the commission of the offenses. On appeal, the defendant claimed he was found guilty of being armed with a firearm, which under section 12022 could not be charged as an enhancement to the crime of assault with a deadly weapon or firearm. The information alleged the defendant personally used a firearm in the commission of the offenses (§ 12022.5). The court properly instructed the jury as to personal use pursuant to CALJIC No. 17.19. The preprinted forms of verdict referenced the numerically correct section (§ 12022.5) but purported to find that the defendant "'was armed with a firearm'" during the commission of the offenses. (*Trotter, supra,* 7 Cal.App.4th at p. 369.)

After the jury was discharged in *Trotter,* but prior to sentencing, the prosecutor noted the discrepancy in the verdict forms and asked the court to modify them by interlineation, striking the word "armed," and adding the words "personally used." Over defense counsel's objection, the court granted the prosecution's motion and amended the verdicts. On appeal, the defendant asserted the trial court was without authority to amend the verdicts after discharge of the jury. The *Trotter* court disagreed and affirmed that portion of the judgment. (*Trotter, supra,* 7 Cal.App.4th at pp. 369, 71.)

The appellate court concluded the trial court did nothing more than correct clerical errors in the forms of verdict. The court did not modify the verdicts themselves. Clerical corrections to forms of verdict after a jury has been discharged have been upheld in federal court. The trial court was authorized to make clerical corrections to the verdict forms. The defendant nevertheless maintained the error was not clerical but an error by the trier of fact which could not be corrected by amendment. The appellate court noted the jury did not draft the forms of verdict. Moreover, the court did not revise any previous act of judicial discretion. Rather, the revision affected only the jury's recordation of its verdict and not the actual verdict rendered. The incorrect wording was found in a preprinted verdict form given to the jury after they were properly instructed as to its use. The error in the form was inadvertent. The jury filled in the form as they were instructed to do, and the court pronounced judgment for personal use. The judgment itself was never revised and the appellate court concluded "[t]his was a textbook example of clerical error." (*Trotter, supra,* 7 Cal.App.4th at p. 370.)

In the instant case, the court's instructions to the jury and the prosecutor's closing argument framed the issue in terms of whether appellant personally used a firearm during the commission of the robberies. Admittedly, the prosecution used the phrase "personally armed" during her argument. However, that portion of the argument did not suggest that the prosecutor was employing the words "personally armed" within the meaning of section 12022. Rather, the prosecutor used the term to demonstrate that appellant was armed with a weapon and displayed it in a menacing manner for purposes of proving the enhancement under section 12022.53, subdivision (b). At the September 8, 2006 sentencing hearing, the court, prosecution, and defense essentially assumed the jury's finding on the firearm enhancement was a finding of personal use. In all likelihood, the court and counsel took that approach because the section 12022.53, subdivision (b) enhancement was the only firearm enhancement alleged as to counts 2 and 3 of the information. In fact, the court advised appellant he was facing the "10-year enhancement under 12022.53(b)." The defense did not object to the inaccurate forms of verdict or to the imposition of the 10-year term at sentencing. A failure to object to the form of the verdict cannot be raised for the first time on appeal. (*People v. Jones* (1997) 58 Cal.App.4th 693, 715.)

In our view, the discrepancy between the consolidated information and the forms of verdict must be deemed waived and the challenge to the section 12022.53, subdivision (b) terms must be rejected.

1    (LD 5:8-11.)

2        ***1. Procedural Default***

3        Respondent alleges that Petitioner is procedurally barred from raising this claim because it

4    was defaulted in the state courts.

5        A federal court will not review a petitioner's claims if the state court has denied relief of

6    those claims pursuant to a state law that is independent of federal law and adequate to support the

7    judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,

8    729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). A state court's refusal

9    to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is

10   considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S.

11   255, 260-61 (1989). This doctrine of procedural default is based on the concerns of comity and

12   federalism. Coleman, 501 U.S. at 730-32.

13       There are limitations as to when a federal court should invoke procedural default and refuse

14   to evaluate the merits of a claim because the petitioner violated a state's procedural rules.

15   Procedural default can only block a claim in federal court if the state court "clearly and expressly

16   states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).

17   For California Supreme Court decisions, this means the Court must specifically have stated that it

18   denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta

19   v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991).

20   If the California Supreme Court denies a petitioner's claims without any comment or citation, the

21   federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

22       In addition, a federal court may only impose a procedural bar on claims if the procedural rule

23   that the state used to deny relief is "firmly established and regularly followed." O'Dell v.

24   Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor

25   respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.

26   Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently

27   applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon,

28   125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129

1   (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

2        In this case, the appellate court refused to consider this claim pursuant to California's

3   contemporaneous objection rule, because the defense failed to object to the inaccurate forms of

4   verdict or to the imposition of the 10-year term at sentencing. As noted by Respondent, California's

5   contemporaneous objection rule is consistently applied independent of federal law. Melendez v.

6   Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).

7   Therefore, Petitioner is procedurally barred from bringing this claim.

8        ***2. Failure to State a Claim***

9        Respondent next contends Petitioner has failed to state a federal question with respect to this

10  claim.

11        A challenge to a jury instruction solely as an error under state law does not state a claim

12  cognizable in a federal habeas corpus action.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). The

13  instant claim, as presented to the state court and in the instant petition, does not allege a violation of

14  the Federal Constitution. The claim is entirely based on state law. Therefore, Respondent is correct

15  that Petitioner fails to present a federal claim.

16        ***3. Lack of Merit***

17        Respondent further contends the claim is meritless and any error is harmless. His arguments

18  are persuasive.

19        There is no clearly established Supreme Court precedent which holds that typographical

20  errors on a verdict form result in an unconstitutional sentence. Further, there is no clearly established

21  Supreme Court precedent that requires a defendant to be sentenced consistent with the verdict form

22  rather than as set forth in the charging document and jury instructions.

23        In any case, the alleged error was harmless under Brecht v. Abrahamson, 507 U.S. 619, 637

24  (1993). As noted by Respondent, Petitioner was correctly instructed on the enhancements charged in

25  the information pursuant to Cal. Penal Code § 12022.53(b). There was no evidence of jury

26  confusion. Thus, Petitioner fails to demonstrate that the typographical error on the verdict form had a

27  substantial and injurious effect or influence in determining the jury's verdict. Brecht, 507 U.S. at

28  637.

1

**RECOMMENDATION**

2          Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus

3  be DENIED WITH PREJUDICE. It is FURTHER RECOMMENDED that the Clerk of Court be

4  DIRECTED to enter judgment.

5          This Findings and Recommendation is submitted to the assigned District Judge, pursuant to

6  the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with the

7  Findings and Recommendation, any party may file written objections with the Court and serve a

8  copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

9  Findings and Recommendation."  Any reply to the objections shall be served and filed within ten

10 days after service of the objections.  The parties are advised that failure to file objections within the

11 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

12 1153 (9th Cir. 1991).

13          IT IS SO ORDERED.

14 **Dated:**   **November 19, 2009**                        **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28